

SEALED

**ORIGINAL**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

NOV - 2 2007

CLERK, U.S. DISTRICT COURT

By _____
Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **307 CV 1835 - K** |
| ex. rel. CARL MALLETT, | § | |
| Plaintiff, | § | CIVIL ACTION NUMBER |
| | § | _1628_ |
| vs. | § | |
| | § | FILED UNDER SEAL PURSUANT TO |
| PFIZER, INC. | § | 31 U.S.C. §3730 |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, and under seal pursuant to 31 U.S.C. §3730, CARL
MALLETT ("Mallett") on behalf of the United States, and files
this Original Complaint against PFIZER, INC. ("Pfizer") and
shows:

### I.
### PARTIES

1.    Carl Mallett is a resident of the Sate of Texas and a
former employee of Pfizer, Inc., a corporation with its principal
place of business in New York.  Pfizer may be served with process
through its registered agent for service of process in Texas: CT
Corp. System, 350 N. St. Paul, Dallas, Texas 75201.

2.    Pfizer is principally engaged in the manufacture and
sale of pharmaceuticals including prescription pharmaceuticals
falling under the jurisdiction and regulation of the U.S. Food
and Drug Administration ("FDA").

3.    Carl Mallett is the original source of the facts and
information hereinafter set forth concerning the activities of

the Defendant.   The facts averred herein are based entirely upon
his personal observation and documents in his possession.

## II.
## JURISDICTION

4.    At all times material hereto, Pfizer regularly
conducted substantial business within the Northern District of
Texas, maintained permanent employees and officers, and made and
is making significant sales within the Northern District of
Texas, and thus is subject to personal jurisdiction in the
Northern District of Texas.

## III.
## FACTS

5.    The realtor has prepared, and will serve with this
Complaint, a disclosure pursuant to 31 U.S.C. §3730(2) of
information in his possession and of which he is the original
source.

6.    AROMASIN®.   In 1999, Pharmacia & Upjohn obtained
approval from the FDA to market the prescription drug exemestane
(trade name Aromasin®).   Pharmacia & Upjohn merged with Pfizer,
Inc. In 2003, thus the rights to the Aromasin® product was
transferred to Pfizer in 2003.   Aromasin® was originally approved
for the treatment of advanced breast cancer in postmenopausal
women whose disease has progressed following tamoxifen therapy.
The product was labeled exclusively for this usage until October
2005, when  Pfizer received additional approval for use of

Aromasin® for adjuvant treatment of postmenopausal women with estrogen-receptor positive early breast cancer who have received two to three years of tamoxifen and are switched to Aromasin® for completion of a total of five consecutive years of adjuvant hormonal therapy.  Both approved uses of Aromasin® involve a prior usage of tamoxifen.  The FDA has not approved Aromasin® for any other purpose, in particular, the FDA has not approved Aromasin® as a first-line treatment for breast cancer.  Sales for Aromasin® were $143,000,000 for 2004 and $247,000,000 for 2005. For 2006, sales of Aromasin® were $320,000,000.

    7.  CAMPTOSAR®.  In 1996, Pharmacia & Upjohn obtained approval from the FDA to market the prescription drug irinotecan hydrochloride (trade name Camptosar®).  Pharmacia & Upjohn merged with Pfizer, Inc.  In 2003, thus the rights to the Camptosar® product was transferred to Pfizer in 2003.  Camptosar® was originally approved as a second-line treatment for advanced colorectal cancer following failure of initial 5-FU-based therapy.  The product was labeled exclusively for this usage until April 2000, when  Pfizer received additional approval for use of Camptosar® as a first-line treatment for advanced colorectal cancer in combination with 5-FU/LV.  Sales of Camptosar® were $554,000,000 for 2004, and $910,000,000 for 2005. For 2006, sales of Camptosar® were $903,000,000.

    8.  SUTENT®.  In 2006, Pfizer obtained approval from the

FDA for sunitinib melate (trade name Sutent®).  Sutent® is indicated for the treatment of gastrointestinal stromal tumor after disease progress on or intolerance to imatinib mesylate and for the treatment of advanced renal cell carcinoma.  For 2006, sales of Sutent® were $219,000,000.

9.   ELLENCE®.  In 1999, Pharmacia & Upjohn obtained approval from the FDA to market the prescription drug epirubicin (trade name Ellence®).  Pharmacia & Upjohn merged with Pfizer, Inc.  In 2003, thus the rights to the Ellence® product was transferred to Pfizer in 2003.  Ellence® was originally approved as a component of adjucant therapy in patients with evidence of axillary node tumor involvement following resection of primary breast cancer.  Sales for Ellence® were $344,000,000 for 2004 and $367,000,000 for 2005.  For 2006, sales of Ellence® were $312,000,000.

10.   Under applicable statutes and regulations, the manufacturer of a prescription drug regulated by the FDA may not promote or market the use of the drug for a purpose other than those approved by the FDA.  Uses of a prescription drug for purposes other than those approved by the FDA are referred to as "off-label" uses.  Promotion by a drug manufacturer of "off-label" uses of prescription drugs is strictly illegal and contrary to the explicit policies and regulations of the United States Government.

**PLAINTIFF'S ORIGINAL COMPLAINT**                              **Page - 4**

11. After achieving FDA approval for Aromasin®, Camptosar®, Ellence®, and Sutent®, Pfizer engaged in a scheme to increase the sales of these drugs while avoiding the substantial expense and delay of petitioning the FDA for approval of expanded or additional uses of the drugs. The scheme consisted of clandestine promotion of off-label uses of the drugs, all in direct contravention fo rules and regulations of the FDA and the Health Care Finance Agency.

12. This scheme was carried out in the following and other ways:

a. For the period after initial approval until October 2005, Aromasin® was actively promoted by Pfizer and Pfizer employees for adjuvant use in women with early breast cancer, an off-label use.

b. From March 2004 to October 2005, Pfizer actively promoted a New England Journal of Medicine study which studied the use of Aromasin® as a first-line treatment for metastatic breast cancer, an off label use.

c. Subsequent to approval for adjuvant use in women with early breast cancer who have received two to three years of tamoxifen therapy, Pfizer and Pfizer employees actively promoted the use of Aromasin® as a first-line cancer treatment drug, an off label use.

d. Pfizer instructed sales staff to actively promote

physician attendance at a Continuing Medical Education
Course promoting studies of Camptosar® , a violation of
CME/CE guidelines.

e.    Pfizer instructed sales staff to promote the use of
Ellence® as a treatment for metastic breast cancer, an
off label use.

f.    Pfizer instructed sales staff to promote various non-
approved studies involving Ellence®.

g.    Pfizer directed sales staff to direct physicians to a
study on Sutent® in violation of federal law.

h.    Pfizer instructed sales staff to being promotion of
Stutent® prior to receiving approval to market the drug
in January of 2006.

13.    For each of the four drugs – Aromasin®, Camptosar®,
Ellance®, and Sutent® – a percentage of the drugs use is off
label.  Furthermore, a percentage of patients who use these drugs
have their prescriptions paid for directly or indirectly, by the
United States, in the form of reimbursements through medicare and
medicaid, and purchases by the Veterans Administration.

14.    The off-label uses of these drugs which are actively
being promoted by Pfizer are uses which are not recognized as
medically accepted uses by the American Hospital Formulary
Service Drug Information, the United States Pharacopeia-Drug
Information, or the American Medical Association Drug

Evaluations.  Thus, these off-label uses are beyond the scope of uses designated by federal law and regulation, in particular 42 U.S.C. §1396r-8, as eligible for coverage by the medicare and medicaid programs.

## COUNT I
### DIRECT SALES TO U.S. GOVERNMENT

15.  Pfizer has sold, and is selling, significant quantifies of these drugs directly to the U.S. Government for off-label uses.

16.  Pfizer is conducting, and has conducted, illegal direct promotion of off-label uses of these drugs directly to the U.S. Government.  Pfizer's activity has directly resulted in a greatly increased use of these drugs by the U.S. Government.  Pfizer's sales to the U.S. Government have been derived through a pattern of fraud, to wit, the deliberate violation of the laws and regulations of the United States and the deliberate active concealment of those violations.  Pfizer's deliberate violation of federal law uses as a method of procuring sales of drugs to an agency of the federal government constituted a False Claim within the meaning of 31 U.S.C. §3729.

## Count II
### DELIBERATE AVOIDANCE OF FDA REGULATIONS/
### MEDICARE AND MEDICAID FINANCED SALES

17.  A significant percentage of patients who use or have used these drugs for off-label purposes are persons whose prescriptions are paid for in whole or in part by state-

administered medical assistance programs which received 90%
reimbursement from the federal government, to wit, medicare and
medicaid.

18. The medicare and medicaid programs of the federal
government include detailed provisions, by statute and
regulation, concerning reimbursement for prescription drugs, drug
utilization review, eligibility of various drugs for full federal
participation ("FFP"), price controls on prescription drugs, and
drug manufacturer rebate agreements. These laws and regulations
include, inter alia, as set forth as 42 U.S.C. §1395Y(c), that no
federal payment shall be made in the case of prescription drug
for which the FDA has issued a notice of hearing regarding the
effectiveness of the drug. Thus, the taking of a regulatory
action by the FDA against the sale and promotion of a drug will,
in circumstances, immediately interrupt the flow of federal funds
for reimbursements of prescriptions written for the drug.

19. Direct promotion of off-label usage of a drug
constitutes "labeling" as defined by the food and drug laws of
the United States. It is reasonably certain, and Pfizer is
aware, that if the FDA became aware of its extensive program of
illegal promotion of off-label uses of these drugs, the FDA would
take administrative action against Pfizer, including, among other
things, a notice of hearing regarding the effectiveness of these
drugs for the promoted off-label uses. Such a notice would, by

**PLAINTIFF'S ORIGINAL COMPLAINT**                    **Page - 8**

federal statute, instantly interrupt the flow of federal funds for reimbursement for off-label prescriptions.

20. Pfizer has, as alleged, actively concealed its off-label promotion of these drugs from the FDA. Said active concealment is motivated by the desire to, and has had the effect of, preserving the flow of federal funds to reimburse these prescriptions. Said active concealment constitutes a pattern of fraudulent conduct through which federal payments are derived, and constitutes False Claims within the meaning of 31 U.S.C. §3729.

COUNT III
AVOIDING FEDERAL PRICE CONTROLS/
EXPERIMENTAL USE OF DRUG

21. Federal law, in particular 21 C.F.R. §312.7, imposes price controls on investigational new drugs used in clinical trials. The regulations state that charging for an investigational new drug is not permitted without FDA approval.

22. Pfizer has launched an illegal program of experimentation with Aromasin®. Pfizer has actually encouraged many physicians to experiment with Aromasin® for off-label uses or to conduct comparative testing of the drug with patients. These experimental programs are informal, generally unscientific, and not reported to the FDA. These informal experiments have been conducted for the dual purposes of increasing sales of Aromasin® while at the same time developing informal data for

possible use with the FDA.  These informal experiments were
conducted by means of prescriptions to patients whose
prescriptions have been paid for, in a substantial number of
cases, by medicare and medicaid at regular prices.

23.  Pfizer's deliberate avoidance of federal price controls
on the experimental investigational use of drugs has caused
financial harm to the federal government by inducing the federal
government to pay for drug prescriptions for which payment is
prohibited by federal law.  Pfizer's deliberate avoidance of
federal price controls on experimental use of drugs constitutes a
patter of fraudulent conduct which induced payments by the
federal government, and constituted False Claims within the
meaning of 31 U.S.C. §3729.

### COUNT IV
### VIOLATING STATE FORMULARIES/
### MEDICARE AND MEDICAID

24.  Under the statutes and regulations establishing the
medical and medicaid programs, the individual states are
permitted to establish drug utilization review boards and
formularies which define those prescriptions drugs and their uses
for which a state agency will make reimbursement under their
medicare programs.  Federal law, in particular 42 U.S.C. §1396r-
8, requires a state formulary to include medically accepted uses
of prescription drugs by reference to the publications set forth
above.

25. Many state medicare agencies intend not to reimburse for prescription drugs for uses not set forth in the publications referred to above, in that the states to not intend to spend money on prescriptions not recognized as medically necessary in sources specified by federal law. However, many states lack the technical ability to monitor precisely for medical diagnoses in the case on individual prescriptions, and thus lack the technical ability to reject reimbursement for all off-label uses of prescription drugs which are not medically accepted according to the federally specified publications. This lack of technical ability represents a loop hole in the scheme of this medicare and medicaid program.

26. Pfizer has recognized and aggressively exploited this loop hole by means of a direct, illegal, nationwide program of promotion of off-label use of these drugs by physicians. Pfizer has conducted this program of promotion knowing that prescriptions for these drugs are generally reimbursed by the state medical programs even though individual prescriptions for Aromasin® fall outside the state formularies because they are not medically accepted.

27. Pfizer's aggressive, illegal scheme of off-label promotion has induced federal payments through a pattern of fraudulent conduct by causing the states, and thus the federal government, to pay out sums to claimants they did not intend to

benefit.  Pfizer's conduct constitutes False Claims within the meaning of 31 U.S.C. §3729.

## COUNT V
## FRUSTRATION OF FEDERAL POLICY

28.  All of the conduct referred to above, to wit, off-label promotion of Aromasin®, Camptosar®, Ellence® and Sutent® in violation of FDA rules, deliberate avoidance of federal price controls of experimental drugs, inducement of physicians and the U.S. Government to prescribe or purchase these drugs by the use of false statements, and avoidance of state formulary restrictions, are substantial and deliberate frustrations of clear federal law, regulation and policy concerning the promotion and sales of prescription drugs.

29.  In the years 2004-1006, Pfizer has sold more than $4,000,000,000 of Aromasin®, Camptosar®, Ellence® and Sutent® knowing that such sales were directly or indirectly paid for by the federal government, and knowing that such sales and the promotions leading to them represented direct frustration and violation of federal law, regulation and policy, and knowing that the federal government was paying out sums on behalf of beneficiaries it did not intend to benefit, to wit, veterans and medicare and medicaid patients who were prescribed off-label uses of these drugs as a result of Pfizer's illegal promotions and schemes.  Pfizer's overall pattern of conduct aimed at avoiding federal law while inducing the payment of federal funds was a

patter to fraud to induce federal payments and constituted False Claims within the meaning of 31 U.S.C. §3729.

WHEREFORE, the Plaintiff demands judgment on behalf of the United States, together with all costs, fees, awards, and interest allowed by 31 U.S.C. §3730.

Respectfully Submitted,

Jon H. Randall
State Bar No. 00791483

**Berry & Randall, L.L.P**
Market-Ross Place
1710 Market Street, Suite 320 LB 41
Dallas, Texas 75202
(214) 915-9800 (telephone)
(214) 752-8250 (facsimile)


Scott D. Levine
State Bar No. 007
Kurt C. Banowsky
State Bar No. 00787036

**Banowsky & Levine, P.C.**
790 Coit Central Tower
12001 N. Central Expressway
Dallas, Texas 75243
(214) 871-1300 (telephone)
(214) 871-0038 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

**SEALED**

FILED UNDER SEAL

JS 44 (Rev. 3/09)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

United States of America ex. rel. Carl Mallett

### DEFENDANTS

Pfizer, Inc.

**3 07 CV 1835 - K**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Berry & Randall, 1710 Market Street, Suite 320 LB 41
Dallas, Texas 75202

Attorneys (If Known)

**RECEIVED**

NOV - 2 2007

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

### VI. CAUSE OF ACTION

Brief description of cause: Action under the False Claims Act 31 U.S.C. §1370

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☒ No

### VIII. RELATED CASE(S) PENDING OR CLOSED

(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE: November 2, 2007

SIGNATURE OF ATTORNEY OF RECORD: _K+B_ Kurt C. Banowsky TX Bar No 00787036

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____